IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| Georgiy Feriyants and | ) | No. 10-17478 |
| Galina Feriyants, | ) | |
| | ) | |
| Debtors. | ) | A. Benjamin Goldgar |

## NOTICE OF MOTION

To:   Please See Service List Attached

On Friday, June 4, 2010, at 1:30 p.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable A. Benjamin Goldgar, or any judge sitting in his stead, in the Courtroom usually occupied by him in Courtroom B, Park City Branch Court, 301 Greenleaf Avenue, Park City, Illinois 60085-5725, and shall then and there present U.S. Bank National Association, N.D.'s Motion for Relief From Automatic Stay, a copy of which is attached.

                            U.S. BANK NATIONAL ASSOCIATION,
                            N.D.

                            By:   /s/ Sheryl A. Fyock
                                  One of Its Attorneys

**Sheryl A. Fyock**
**LATIMER LeVAY JURASEK LLC**
55 West Monroe Street
Suite 1100
Chicago, Illinois  60603
(312) 422-8000
(312) 422-8001 (Fax)
ARDC No. 06204378

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| Georgiy Feriyants and | ) | No. 10-17478 |
| Galina Feriyants, | ) | |
| | ) | |
| Debtors. | ) | A. Benjamin Goldgar |

### MOTION FOR RELIEF FROM AUTOMATIC STAY

**U.S. BANK NATIONAL ASSOCIATION, N.D.,** by and through its attorneys, **LATIMER LeVAY JURASEK, LLC,** hereby moves this Court to modify the automatic stay against the Debtors, **Georgiy Feriyants and Galina Feriyants** ("Debtors"), pursuant to Sections 362(d)(1) and (2) of the United States Bankruptcy Code. In support thereof, the Bank hereby states as follows:

1. U.S. Bank National Association, N.D. ("Bank") is a national banking association with its principal office located in Minneapolis, MN.

2. On or about July 17, 2006, the Bank made a loan to Debtors in the original principal amount of $20,000.00, as evidenced by a Promissory Note ("Note"), executed by Debtors.

3. The Note is secured by a Mortgage of even date executed by Debtors in the principal amount of $20,000.00 on the property commonly known as 1150 W. Baldwin Court, Mequon, Wisconsin 53092, which is non-residential property ("Property"). Copies of the Note and Mortgage are attached hereto and incorporated herein as Exhibits A and B, respectively.

4.     Debtors defaulted on the Note by failing to make installment payments pursuant to its terms.

5.     On April 20, 2010, Debtors filed a petition under Chapter 7 of the United States Bankruptcy Code thereby staying any action by the Bank to recover the amounts due under the Note.

6.     As of April 20, 2010, a balance of $9,818.23 is due and owing from the Debtors to the Bank, plus attorneys fees and costs.

7.     There is an additional mortgage on the Property which Debtors have scheduled showing a balance of $113,764.00. Assuming Debtors' valuation of $100,000.00 for the Property, Debtors have no equity in the Property.

8.     Debtors have not provided any adequate protection to the Bank.

9.     Debtors have not made any payments since September 1, 2009.

10. Further, pursuant to Debtors' Plan, the Property is to be surrendered.

WHEREFORE, **U.S. BANK NATIONAL ASSOCIATION, N.D.** requests that this Court enter an order modifying the automatic stay to permit it to exercise its remedies against the Property pursuant to the laws of the State of Illinois and for such other and further relief that this Court deems proper and just.

U.S. BANK NATIONAL ASSOCIATION, N.D.

By:     /s/ Sheryl A. Fyock
              One of Its Attorneys

**Sheryl A. Fyock**
**LATIMER LeVAY JURASEK LLC**
55 West Monroe Street, Suite 1100
Chicago, Illinois  60603
(312) 422-8000
(312) 422-8001 (Fax)
ARDC No. 06204378

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| Georgiy Feriyants and | ) | No. 10-17478 |
| Galina Feriyants, | ) | |
| | ) | |
| Debtors. | ) | A. Benjamin Goldgar |

### CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I served the foregoing Notice of Motion and Motion for Relief from Automatic Stay by mailing copies to those individuals on the following Service List by depositing same in the U.S. mail depository located at 55 West Monroe Street, Chicago, Illinois on May 11, 2010, postage prepaid.

                                    /s/ Sheryl A. Fyock
                                **Sheryl A. Fyock**
                                **LATIMER LeVAY JURASEK LLC**
                                55 West Monroe Street
                                Suite 1100
                                Chicago, Illinois  60603
                                (312) 422-8000
                                (312) 422-8001 (Fax)
                                ARDC No. 06204378

**SERVICE LIST**

Geogiy Feriyants
Galina Feriyants
228 Pinehurst Drive
Mundelein, Illinois 60060

Alexey Y. Kaplan, Esq.
Kaplan Law Offices, P.C.
4043 West Dempster Street
Skokie, Illinois 60076

John E. Gierum
Trustee
Gierum & Mantas
9700 Higgins Road
Suite 1015
Rosemont, Illinois 60018

William T. Neary
Office of the United States Trustee
Region 11
219 South Dearborn Street
Room 873
Chicago, Illinois 60604

*Exhibit A*

| Borrower(s) | Lender | Loan |
|---|---|---|
| GEORGIY FERIYANTS<br>GALINA FERIYANTS<br><br>1150 BALDWIN CT W<br>MEQUON WI 53092-5975<br><br>"I" means each Borrower above, jointly and severally. | U.S. Bank National Association ND<br>11111 N PORT WASHINGTON RD<br>MEQUON WI 53092<br><br><br>"You" means the Lender, its successors and assigns. | Number _511387375_<br>Date _07/17/2006_<br>Maturity Date _8/01/2011_<br>Loan Amount $ _$20,000.00_<br>Renewal Of _____ |

Note - For value received, I promise to pay to you, or your order, at your address above, the principal sum of: __$20,000.00__
_____ Dollars $ __$20,000.00__ .
plus interest from __7/17/2006__ at the rate of __7.000__ % per year until __maturity__ .

☐ Additional Finance Charge - I also agree to pay a nonrefundable fee of $_____ and it will be ☐ paid in cash.
   ☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)
☐ Variable Rate - The (annual) interest rate above may change so as to be _____
_____
_____

Timing and Frequency of Interest Rate Changes - The rate can first change on _____
   and can change as often as _____ after that.
Lifetime Rate Change Limitations - The rate cannot ever exceed _____ . The rate cannot ever be less than _____ .
Payment Changes - A change in the interest rate will cause a change in: ☐ The amount of each scheduled payment. ☐ The amount due at maturity.
Post Maturity Interest - Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity.
☐ Terms - If checked, terms provided reflect an adjustment to the lowest annual percentage rate available for this loan product. This adjustment reflects a higher rate of interest or finance charge due to information contained in a consumer credit report. You obtained this report from, and I may obtain a free copy of it by contacting:




Payments - I will pay this note as follows:
   (a) ☐ Interest payments will be due _____
         Principal payments will be due _____ .
   (b) ☒ This note has __60__ payments. The first payment will be in the amount of $ __397.14__ and will be due
         __9/01/2006__ . A payment of $ __397.14__ will be due on the __1st__ day of each __month__
         thereafter. The final payment of the entire unpaid balance of principal and interest will be due __8/01/2011__ .
The Purpose Of This Loan Is __Other_____ .
☒ Late Charge - I agree to pay a late charge if any scheduled payment (or part thereof) is made more than __5__ days after it is due equal to __$29.00__ .
☒ Early Closure Fee - If I prepay this loan in whole, I will pay you an early closure fee equal to _____
   __1% of the original loan amount with a minimum of $250 and a maximum of $500__
   __if closed within the first three years.__
☒ Returned Payment Charge - I agree to pay a fee of $ __$25.00__ for each check, negotiable order of withdrawal, draft or electronic payment I arrange in connection with this loan that is returned because it has been dishonored.
Security - (If neither of the next two options are checked, this loan is not specifically secured except: 1. through cross collateralization from other loans; and 2. a security interest in all deposit accounts with U.S. Bank, N.A.)
   ☒ Separate Security - This loan is secured by separate __Mortgage_____ , dated __7/17/2006__ .
   ☐ Security Agreement - I give you a security interest in the Property described below. The rights I am giving you in this Property and the obligations this agreement secures are defined on page 4 of this agreement.
         1150 W BALDWIN CT
         MEQUON, WI 53092



This property will be used for __Consumer_____ purposes.      _G.F_   _GF_     (page 1 of 5)

Exper℗ ©1981, 1988, 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form USBNDASV-WIX 8/19/2004

Loan number ___511387375___

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | AMOUNT FINANCED The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS The amount I will have paid when I have made all scheduled payments. |
|---|---|---|---|
| 6.9960 % | $ $3,828.40 | $ $20,000.00 | $ $23,828.40 |

My Payment Schedule will be:

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| 60 | 397.14 | monthly beginning 9/01/2006 |

☐ Variable Rate
  ☐ This note contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.
  ☐ The annual percentage rate may increase during the term of this transaction if _____
  A rate increase will take the form of _____.
  If the rate increases by _____ % in _____ the _____ will increase to _____. The interest rate may not increase more often than _____, and may not increase more than _____ % each _____.
  The interest rate will not go above _____ %.

Security - I am giving a security interest in
  ☐ the Goods or Property being purchased.
  ☒ my deposit accounts and other rights to the payment of money from U.S. Bank, NA.
  ☒ Collateral securing other loans with you may also secure this loan.
  ☒ (description of other property)
  1150 W BALDWIN CT
  MEQUON, WI 53092

☒ Late Charge - I agree to pay a late charge if any scheduled payment (or part thereof) is made more than __5__ days after it is due equal to $29.00.

Prepayment - If I pay off this note early, I   ☒ may   ☐ will not   have to pay a penalty.
☒ Assumption - Someone buying the property securing this loan cannot assume this loan on its original terms.
☐ Required Deposit - The annual percentage rate does not take into account my required deposit.
Filing Fees $ _____ Non Filing Insurance $ _____
I can see my contract documents for any additional information about nonpayment, default, and any required repayment before the schedule date, and prepayment refunds and penalties.

Credit Insurance - Credit life, credit accident and sickness (disability) are not required to obtain credit and you will not provide them unless I sign and agree to pay the additional premium. If I want such insurance, you will obtain it for me (if I qualify for coverage). My (Our) signature(s) below means I (we) want the coverages signed for, and only those coverages.

CREDIT LIFE:
  ☐ Single.   Premium: $ _____ Term _____
    Date of Birth _____ Insured: _____ X _____ Date _____
  ☐ Joint.   Premium: $ _____ Term _____
    Date of Birth _____ 1st Insured: _____ X _____ Date _____
    Date of Birth _____ 2nd Insured: _____ X _____ Date _____

CREDIT DISABILITY:
  ☐ Single.   Premium: $ _____ Term _____
    Date of Birth _____ Insured: _____ X _____ Date _____

See the section titled "Monthly Outstanding Balance Insurance Premiums" below for any transaction secured by (a) real estate, or (b) any personal property that is a dwelling, such as a mobile home.
NONE: I/We do not desire credit insurance of any kind on this account. (All borrowers/debtors sign below)
  X _____ Date 7/17/06   X _____ Date 7/17/06
☒ Property Insurance - Property insurance is required. I may obtain property insurance from anyone I want that is acceptable to you.
☐ Single Interest Insurance - Single interest insurance (sometimes referred to as VSI) is required. I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you, I will pay $ _____ for _____ of coverage.

(page 2 of 5)

Experô ©1983, 1988, 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form USBNDASV-WIX 8/19/2004

ADDITIONAL TERMS OF THE NOTE                                          511387375

DEFINITIONS - "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

APPLICABLE LAW - You are a National bank located in North Dakota. The interest rate, fees and related charges that you can charge for this loan are pursuant to the law of the state of North Dakota, regardless of where this loan is made or where I live. As for other issues, the law of my state of residence and the law of the state where any property is located will apply.

The fact that any part of this note cannot be enforced will not affect the rest of this note. Any change to this note or any agreement securing this note must be in writing and signed by you and me.

THIS FORM - This form is designed to be used for many types of transactions. A paragraph or section that begins with a " ☐ " that is not checked does not apply to this loan.

PAYMENTS - Each payment I make on this loan will be applied (to the extent of the payments) as follows to: (1) monthly outstanding balance insurance premiums (for loans secured by real estate or a personal property residence, if I elect to buy such insurance); (2) accrued interest; (3) principal (as explained below); (4) charges other than interest or principal, if any; and (5) principal. The portion applied to principal in step (3) above will be the difference between the *scheduled* payment amount and the sum of any monthly outstanding balance insurance premium and the accrued interest.

No late charge will be assessed on any payment when the only delinquency is due to a late charge assessed on earlier payments. The actual amount of my final payment will depend on the interest rates (if variable) and my payment record.

PREPAYMENT - I may prepay this loan in whole or in part at any time. If I prepay in part, I must still make each later payment in the original amount as it becomes due until this note is paid in full.

INTEREST - Interest accrues on the principal remaining unpaid from time to time, until paid in full. If "Variable Rate" is checked on page 1, I will pay interest at the rates in effect from time to time. If a payment is not sufficient to pay the accrued interest, as of a scheduled payment date, the accrued and unpaid interest will be added to principal, and itself earn interest.

Decreases in the interest rate for this note will have the opposite effect on payments that increases would have. The interest rate(s) and other charges on this loan will never exceed the highest rate or charge allowed by law for this loan. Changes in the index between scheduled changes in the interest rate will not affect the interest rate. If the index specified on page 1 ceases to exist, I agree that you may substitute a similar index for the original.

---

THE SECTIONS IN THIS BOX WILL APPLY IF THIS IS A LOAN TO ONE OR MORE INDIVIDUALS FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES AND THE AMOUNT FINANCED IS $25,000.00 OR LESS.

DEFAULT - I will be in default on this agreement if either (a) or (b) occurs:
(a)
  (1) if the interval between scheduled payments is 2 months or less,
      (A) I have outstanding an amount exceeding one full payment which has remained unpaid for more than 10 days after the scheduled or deferred due dates; or
      (B) I fail to pay the first payment or the last payment, within 40 days of its scheduled or deferred due date;
  (2) if the interval between scheduled payments is more than 2 months, I have all or any part of one scheduled payment unpaid for more than 60 days after its scheduled or deferred due date; or
  (3) if the transaction is scheduled to be repaid in a single payment, I have all or any part of the payment unpaid for more than 40 days after its scheduled or deferred due date.

For purposes of this paragraph (a) the amount outstanding shall not include any delinquency or deferral charges and shall be computed by applying each payment first to the installment most delinquent and then to subsequent installments in the order they come due;
(b) I fail to observe any other covenant of the transaction, breach of which materially impairs the condition, value or protection of or the your right in any collateral securing the transaction, or materially impairs my ability to pay amounts due under the transaction.

DEFAULT CHARGES - If I default, I agree to pay the statutory costs as specifically authorized by Wis. Stat. § 422.413 which you incur in the disposition of any collateral and any other such charges you incur as authorized by Wis. Stat. Chaps. 421 to 427.

I also agree to pay your reasonable attorney's fees
(a) in the event I voluntarily or involuntarily seek relief under the United States Bankruptcy Code; and/or
(b) under the conditions for attorney's fees as provided in Wis. Stat. § 422.411.

RIGHT TO CURE - Your right to exercise your remedies, as provided below, is subject to my limited right to cure a default and to receive notice of such right. You will provide the notice when required, which will explain my rights. I understand I may have the right to redeem collateral under some conditions.

---

THE SECTIONS IN THIS BOX WILL APPLY IF THE AMOUNT FINANCED IS MORE THAN $25,000

DEFAULT - I will be in default on this loan and any agreement securing this loan if:
1. I fail to make a payment in full when due; or
2. Your prospect of payment, performance, or ability to realize upon any collateral is significantly impaired.
If any of us is in default on this note or any security agreement, you may exercise your remedies against any or all of us.

DEFAULT CHARGES - If I default, I agree to pay the costs you incur to collect this note and to realize on any collateral, including your reasonable attorney's fees.

---

REMEDIES - Subject to the RIGHT TO CURE section above (if applicable), if I am in default on this loan or any agreement securing this loan, you may exercise your rights provided by law and this agreement. I also understand and agree to the following:
1. You may accelerate the due date of the unpaid principal balance of the loan, plus accrued interest and charges, making it due in its entirety before the scheduled due date.
2. You may realize on any property securing this transaction.
3. You may demand more security or new parties obligated to pay this loan (or both) in return for not using any other remedy;
4. You may make a claim for any and all insurance benefits or refunds that may be available.

If I default and you choose not to exercise a remedy, you do not lose the right to treat the event as a default if it happens again.

SECURITY INTEREST IN DEPOSIT ACCOUNTS AT U.S. BANK, N.A. -
  Governing law: For purposes of this security interest, we agree that the law of the state of North Dakota will control as to the creation, perfection, and effect of perfection of the interest granted in this paragraph. (Technically speaking, we are agreeing that North Dakota is your jurisdiction, as provided in N.D. Stat. § 41-9-24.)
  Grant: I grant to you a security interest in any and all deposit accounts (demand, time, savings, passbook, and specifically including but not limited to any certificated time accounts) I currently have or hereafter create with U.S. Bank, N.A. (your affiliate).
  Exception: This grant does not apply to accounts that constitute a part of any qualified retirement plan (such as an Individual Retirement Account), any retail repurchase agreement, or any account where my only right is clearly and solely in a representative capacity.
  Secures: This security interest secures the payment of this debt and any other debt I may owe you, now or hereafter.
  Usage: You have the right to direct the U.S. Bank, N.A. to restrict or prohibit further withdrawals from my accounts, and to comply with your instructions directing disposition of funds in my accounts, including, to apply such funds toward payment of the secured debts. While you have the right to do this at any time, and without notice, it is your present intention to exercise these rights only in the event of my default on this or any other secured obligation, and to provide notice to me.
  U.S. Bank, N.A. agrees to comply with your instructions for disposition of funds in my accounts without first obtaining my consent (other than the consent contained and expressed in this agreement).
  I understand that U.S. Bank, N.A. is your affiliate.
  Setoff: I also acknowledge that U.S. Bank, N.A. has a right of setoff in the event I owe money to U.S. Bank, N.A. This right of setoff, in the event of a conflict with the security interest granted here, will be subordinate to this security interest.

MONTHLY OUTSTANDING BALANCE INSURANCE PREMIUMS - This section applies to any transaction secured by (a) real estate, or (b) any personal property that is a dwelling, such as a mobile home.

The insurance premiums for credit life and credit disability insurance are calculated on the monthly outstanding balance method. This means that each month you multiply the loan principal balance by the monthly premium rate (which is a rate per $100 of debt per month).

Each of the premiums quoted above for credit life and credit disability are the total of all the monthly premiums for the respective insurance, based on the assumed monthly principal balances. These assumed monthly principal balances assume that the interest rate will remain the same throughout the term of the transaction (which is not likely if this is a variable rate transaction), and that I will make all my payments in full and on time.

If the interest rate increases, and my periodic payment does not increase each month (as is normally how you schedule payments for variable rate transactions) then the amount I will pay for insurance I have bought from you will be more. Likewise, if the interest rate declines, or if I prepay, the amount for insurance will decline, as will the amount and length of coverage. In either case, this effect on premium is because the actual monthly principal balances will not be as assumed.

If I buy insurance from you for credit life or credit disability, the premiums are included in my periodic payments, and in the TOTAL OF PAYMENTS section. If I cancel the insurance before the scheduled maturity date, my periodic payment

amounts will remain as originally scheduled. This means that more of my payment will be available for the principal than otherwise would be true, and the number of payments, or the amount of my final payment, will be less than it otherwise would be. (See the paragraph titled PAYMENTS above.)
OBLIGATIONS INDEPENDENT - This paragraph applies if there are multiple parties (for example, a maker and a guarantor or co-maker) who are obligated to pay this loan. We understand that the obligation of each of us to pay this loan is independent of the obligation of the others to pay this loan. You may, without notice, release or give up any right you may have, extend new credit, renew or change this obligation, as to any of us, without affecting the obligation of any others (until this loan is paid in full).
You may fail to perfect your security interest in, impair, or release any security and I (we) will still be obligated to pay this loan.
WAIVER - I waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor and notice of protest.
FINANCIAL STATEMENTS - I will give you any financial statements or information that you feel is necessary. All financial statements and information I give you will be correct and complete.
PURCHASE MONEY LOAN - If this is a Purchase Money Loan, you may include the name of the seller on the check or draft for this loan.
NAME AND LOCATION - My name and address indicated on page 1 are my exact legal name and my principal residence. I will provide you with at least 30 days' notice prior to changing my name or principal residence.
SKIP PAYMENTS - From time to time, you may offer me the chance to skip a payment on this loan. If I choose to accept this offer, I agree to pay a fee up to $50.00, and the term of this loan will be extended one month.

### ADDITIONAL TERMS OF THE SECURITY AGREEMENT

SECURED OBLIGATIONS - This security agreement secures this loan (including all extensions, renewals, refinancings and modifications).
It also secures any other debt I have with you now or later. Property described in this security agreement will not, however, secure other such debts if:
(1) the Property is my principal dwelling;
(2) this security interest is in household goods and the other debt is a consumer loan; or,
(3) this Property is described in Wis. St. § 422.417(3).
This security agreement will last until it is discharged in writing.
For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement:
(a) Payments on any nonpurchase money loan also secured by this agreement will not be deemed to apply to the Purchase Money Loan; and
(b) Payments on the Purchase Money Loan will be deemed to apply first to the nonpurchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items were acquired.
No security interest will be terminated by application of this formula. "Purchase Money Loan" means any loan of which the proceeds, in whole or in part, are used to acquire any property securing the loan and all extensions, renewals, consolidations and refinancings of such loan.
PROPERTY - The word "Property," as used here, includes all property that is listed in the security agreement on page 1. If a general description is used, the word "Property" includes all my property fitting the general description. Property also means all benefits that arise from the described Property (including all proceeds, insurance benefits, payments from others, interest, dividends, stock splits and voting rights). It also means property that now or later is attached to, is a part of, or results from the Property, and all supporting obligations. "Proceeds" includes anything acquired on the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising out of the Property; and any collections and distributions on account of the Property.
OWNERSHIP AND DUTIES TOWARD PROPERTY - Unless a co-owner(s) of the Property signed a third party agreement, I represent that I own all the Property. I will defend the Property against any other claim. I agree to do whatever you require to perfect your interest and keep your priority. I will not do anything to harm your position. I will not use the Property for a purpose that will violate any laws or subject the Property to forfeiture or seizure.
I will keep the Property in my possession (except if pledged and delivered to you). I will keep it in good repair and use it only for its intended purposes. I will keep it at my address unless we agree otherwise in writing.
I will not try to sell or transfer the Property, or permit the Property to become attached to any real estate, without your written consent. I will pay all taxes and charges on the Property as they become due. I will inform you of any loss or damage to the Property. You have the right of reasonable access in order to inspect the Property.
If the Property is a motor vehicle, I represent that it is not a vehicle seized pursuant to any federal, state or local forfeiture law.
INSURANCE - I agree to buy the insurance coverages required on page 2 covering the Property against the risks and for the amounts you require. I will name you as loss payee on any such policy. If there is an insured loss, you may require added security on this loan if you agree that insurance proceeds may be used to repair or replace the Property. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will buy the insurance from a firm authorized to do business in the appropriate state. The firm will be reasonably acceptable to you. I will keep the insurance until all debts secured by this agreement are paid.

511387375
COLLATERAL PROTECTION INSURANCE - Unless I provide you with evidence of the insurance coverage required by my agreement with you, you may purchase insurance at my expense to protect your interests in my collateral. This insurance may, but need not, protect my interests. The coverage that you purchase may not pay any claim that I make or any claim that is made against me in connection with the collateral. I may later cancel any insurance purchased by you, but only after providing you with evidence that I have obtained insurance as required by our agreement. If you purchase insurance for the collateral, I will be responsible for the costs of that insurance, including interest and any other charges you may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to my total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own. I agree that the cost of such insurance will be due immediately.
FILING - I authorize you to file a financing statement covering the Property. I agree to comply with and facilitate your requests in connection with obtaining possession of or control over the Property until this security agreement is terminated. A copy of this security agreement may be used as a financing statement when allowed by law.
DEFAULT AND REMEDIES - If I am in default, in addition to the remedies listed in the note portion of this document and subject to any of the limitations in the RIGHT TO CURE paragraph, you may (after giving notice and waiting a period of time, if required by law):
(a) Pay taxes or other charges, or purchase any required insurance, if I fail to do these things (but you are not required to do so). You may add the amount you pay to this loan and accrue interest on that amount at the interest rate(s) in effect from time to time, on this note until paid in full;
(b) Require me to gather the Property and any related records and make it available to you in a reasonable fashion;
(c) Take immediate possession of the Property, but in doing so you may not breach the peace or unlawfully enter onto my premises. You may sell, lease or dispose of the Property as provided by law. (If the Property includes a manufactured home, you will begin the repossession by giving me notice and an opportunity to cure my default, as required by law.) You may apply what you receive from the sale of the Property to your expenses and then to the debt. If what you receive from the sale of the Property is less than what I owe you, you may take me to court to recover the difference (to the extent permitted by law); and
(d) Keep the Property to satisfy the debt.
I agree that when you must give notice to me of your intended sale or disposition of the Property, the notice is reasonable if it is sent to me at my last known address by first class mail 10 days before the intended sale or disposition. I agree to inform you in writing of any change in my address.
ASSUMPTIONS - This security agreement and any loan it secures cannot be assumed by someone buying the Property from me. This will be true unless you agree in writing to the contrary. Without such an agreement, if I try to transfer any interest in the Property, I will be in default on all obligations that are secured by this security agreement.

---

**THIRD PARTY AGREEMENT**
For the purposes of the provisions within this enclosure "I," "me" or "my" means the person signing below and "you" means the Lender identified on page 1.
I agree to give you a security interest in the Property that is described on page 1. I agree to the terms of this note and security agreement but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any Borrower, renew or change this note or security agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any Borrower.
I HAVE RECEIVED A COMPLETED COPY OF THIS NOTE AND SECURITY AGREEMENT.

NAME

X

---

**NOTICE TO COSIGNER**
You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.
You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.
The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.
This notice is not the contract that makes you liable for the debt.

*(page 4 of 5)*

Experə © 1981, 1988, 1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form USBNDASV-WIX  8/19/2004



| | |
|---|---|
| **AUTOMATIC WITHDRAWAL:**<br>I ☒ DO ☐ DO NOT want Automatic Withdrawal.<br>By signing below I authorize you to automatically withdraw my regular payment from my transaction account listed below on each payment date.<br><br>Account number for automatic payment:<br><br>182371263415<br><br>X _C. [signature]_ X _G. [signature]_ | Loan number: 511387375 |
| | **AUTHENTICATION BY U.S. BANK, N.A.:**<br>U.S. Bank, N.A. affiliate of and agent for the lender on this loan, acknowledges and agrees to the control agreement contained in the Security Interest in deposit accounts, and the subordination of its right of setoff to this security interest if and to the extent of a conflict.<br>This is intended as an authentication. U.S. BANK N.A. |

**ACH CANCELLATION FEE:** I agree that if I arrange for automatic payments on this loan, either on this form or otherwise, and if my automatic payments are stopped for any reason not your fault, I agree to pay you an ACH cancellation fee of $ 50.00 .
I understand that automatic payments stop, and must be re-contracted for, if, for example, I close my account (without arranging for automatic payment from another account), there is insufficient funds in the account, or I stop payment on an automatic payment.

**FOR WISCONSIN RESIDENTS ONLY**

☐ Marital purpose. If checked, the obligation evidenced by this note and any agreement securing this note is incurred in the interest of my marriage or family.

☐ Management and Control. If checked, I can act alone to assign, create a security interest in, mortgage, or otherwise encumber any property securing this note.

X _____

Nonsigning Spouse. The undersigned is married to the borrower signing this note and waives any notice of this extension of credit.

X _____

This note is a "transferable record" as defined in applicable law relating to electronic transactions. Therefore, the holder of this note may, on behalf of the maker of this note, create a microfilm or optical disk or other electronic image of this note that is an authoritative copy as defined in such law. The holder of this note may store the authoritative copy of such note in its electronic form and then destroy the paper original as part of the holder's normal business practices. The holder, on its own behalf, may control and transfer such authoritative copy as permitted by such law.

SIGNATURES - I agree to the terms set out on pages 1 thru 5 of this agreement. I have received a copy of this document on today's date.

Cosigners - see notice above before signing.

In this notice, "you" refers to the borrowers.
NOTICE TO BORROWER:
(a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON ALL PAGES
(b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REDUCTION OF THE FINANCE CHARGE.

Signature _[signature]_ 07.17.06
Date

Signature _G. [signature]_ 07.17.06
Date

Signature _____ _____
Date

*Exhibit B*

Return Address:
First American
1228 Euclid Avenue, 4th Floor
Cleveland, OH 44115
800-221-8683

Order #: 9831048
ALS #: 511387375

Parcel Number: 15-166-11-50-000

RONALD A. VOIGT
OZAUKEE COUNTY
REGISTER OF DEEDS
PORT WASHINGTON, WI
TXID: 35935

RECORDED ON
08/07/2006   12:11PM
REC FEE:    23.00
TRANS FEE:   0.00
PAGES:       7
EXEMPT #:    0

# MORTGAGE
(With Future Advance Clause)

☐ Construction Mortgage. This is a Construction Mortgage which secures an obligation incurred for the construction of an improvement on the Property, which may include the Property's acquisition cost. This obligation provides for future advances made for the completion of the contemplated improvement on the mortgaged Property.

─────────── State of Wisconsin ─────────────────────────── Space Above This Line For Recording Data ───────────

1. DATE AND PARTIES. The date of this Mortgage (Security Instrument) is 07/17/2006 ........................... and the parties, their addresses and tax identification numbers, if required, are as follows:

   MORTGAGOR:  GEORGIY FERIYANTS AND GALINA FERIYANTS    **Husband and Wife**

   LENDER:  U.S. Bank, National Association N.D.
            4325 17th Avenue S.W.
            Fargo, ND 58103

2. CONVEYANCE. For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender the following described property:

   The real estate mortgage herein is described in Exhibit "A" which is attached hereto and hereby incorporated herein by reference.

The property is located in OZAUKEE .................................. at 1150 W BALDWIN CT ..........................
                            (County)
.............................., MEQUON ........................................, Wisconsin 53092 ..........
     (Address)                    (City)                                                    (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

9831048

WISCONSIN - MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE)                                              (page 1 of 6)
- 1994 Bankers Systems, Inc., St. Cloud, MN Form USB-REMTG-WI 12/20/2001 6100AD 12/01

7

3. MAXIMUM OBLIGATION LIMIT. The total principal amount secured by this Security Instrument at any one time shall not exceed $ 20,000.00 .................................................. . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security.
4. SECURED DEBT AND FUTURE ADVANCES. The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*




    B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced, and whether or not the purpose of the future advances or future obligations is related to the purpose of the Secured Debt. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.
    C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.
    D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.
This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.
5. PAYMENTS. Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.
6. WARRANTY OF TITLE. Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.
7. PRIOR SECURITY INTERESTS. With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:
    A. To make all payments when due and to perform or comply with all covenants.
    B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.
    C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.
8. CLAIMS AGAINST TITLE. Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.
9. ~~DUE-ON-SALE-OR-ENCUMBRANCE. Lender may, at its option, declare the entire balance of the Secured Debt to be~~ immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. § 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.
If Lender exercises this option, Lender shall give Mortgagor notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Mortgagor must pay all sums secured by this Security Instrument. If Mortgagor fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Mortgagor.

9831048

© 1994 Bankers Systems, Inc., St. Cloud, MN Form USB-REMTG-WI 12/20/2001 5100AD 12/01                                      6. ✓      *(page 2 of 6)*
                                                                                                                                       C.K.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

    Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform the covenants and agreements contained in this Security Instrument regarding preserving or insuring the Property, then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's right in the Property, and after sending Mortgagor written notice and allowing Mortgagor a reasonable opportunity for performance, when legally required. Notice is not required for an agricultural transaction where the collateral is perishable and threatens to decline speedily in value.

    If there is a legal proceeding that may significantly affect Lender's right in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), the Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property, after sending Mortgagor a written notice of the right to cure and waiting 15 days, if applicable.

    Lender's actions under this section may include paying any sums secured by a lien that has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this covenant, Lender does not have to do so, nor does it preclude Lender from exercising any other of Lender's rights under the law or this Security Instrument.

    Any amount paid by Lender to protect Lender's security interest, in accordance with the terms of this Security Instrument, shall be secured by this Security Instrument. These sums will be due on demand and will accrue interest at the highest rate in effect from time to time on the Secured Debt from the date of payment until paid in full.

12. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (all referred to as "Property"): all existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as "Leases"); and rents, issues and profits (all referred to as "Rents"). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided with this Assignment, and all future Leases and any other information with respect to future Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default.

    Upon default, Mortgagor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium, time share estate or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium, time share estate or planned unit development.

14. **DEFAULT.** Mortgagor will be in default if any of the following occur with regard to the Secured Debt which is secured by this Security Instrument: (1) with respect to a transaction other than one pursuant to an open-end plan, (a) if the interval between scheduled payments is 2 months or less, to have an outstanding amount exceeding one full payment which has remained unpaid for more than 10 days after the scheduled or deferred due dates, or the failure to pay the first payment or the last payment, within 40 days of its scheduled or deferred due date, (b) if the interval between scheduled payments is more than 2 months, to have all or any part of one scheduled payment unpaid for more than 60 days after its scheduled or deferred due date, (c) if the transaction is scheduled to be repaid in a single payment, to have all or any part of the payment unpaid for more than 40 days after its scheduled or deferred due date; (2) with respect to a transaction pursuant to an open end plan, failure to pay when due on 2 occasions within any 12-month period; or (3) if any other condition in this Security Instrument is violated, and such breach materially impairs the condition, value or protection of or Lender's right in the Property, or materially impairs Mortgagor's ability to pay amounts due.

9831048

(page 3 of 6)

_ 1994 Bankers Systems, Inc., St. Cloud, MN Form USB-REMTG-WI 12/20/2001 6100AD 12/01

15. **NOTICE OF DEFAULT AND RIGHT TO CURE.** Where required by law, Lender will send Mortgagor written notice of default and right to cure. The notice shall specify (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 15 days from the date the notice is mailed to Mortgagor, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and the sale of the Property. The notice shall further inform Mortgagor of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Mortgagor to acceleration and sale. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.
16. **ACCELERATION.** If the breach is not cured on or before the date specified in the notice of default, Lender, at Lender's option, may declare all of the sums secured by this Security Instrument to be immediately due and payable without further demand and may invoke the power of sale and other remedies permitted by applicable law.
17. **DEFAULT CHARGES AND ATTORNEYS' FEES.** Lender shall be entitled to collect all statutory collection expenses incurred in the disposition of the Property and such other charges as are specifically authorized by Wis. Stat. Ch. 421 to 427, or if the Property is secured by a first lien real estate mortgage or its equivalent security interest as defined in Wis. Stat. Ch. 428, those expenses authorized by that chapter, including attorneys' fees, to the extent permitted. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. After Mortgagor has paid all sums secured by this Security Instrument, and Lender has terminated any commitments for future advances, Lender shall release this Security Instrument without charge to Mortgagor. Mortgagor agrees to pay for any recordation costs of such release.
18. **POWER OF SALE.** If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by applicable law to Mortgagor and to the other persons prescribed by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all statutory collection expenses as described in section 17 above; (b) to all sums secured by this Security Instrument; and (c) the excess, if any, to the clerk of the Circuit Court of the County in which the sale is held.
19. **MORTGAGOR'S RIGHT TO REINSTATE.** The Mortgagor may redeem the Property at any time before the sale by paying the following: (a) the amount of the judgment, with interest and statutory collection expenses as described in section 17 above; (b) any statutory collection expenses incurred after the judgment; and (c) any taxes paid by the Lender after the judgment, with interest from the date of payment. The rate of interest paid will be the same rate of interest as found in the Secured Debt.
20. **FORECLOSURE WITHOUT DEFICIENCY.** If this Property is a 1-4 family residence that is owner-occupied at the beginning of a foreclosure action, a farm, a church or a tax-exempt nonprofit charitable organization, then Mortgagor agrees to the provisions of Wis. Stat. § 846.101, as amended, permitting Lender to waive its right to a judgment for a deficiency on real estate of 20 acres or less, and to hold a sale of the Property six months after the foreclosure judgment is entered. If this Property is not a 1-4 family residence that is owner-occupied at the beginning of a foreclosure action, a farm, a church or a tax-exempt nonprofit charitable organization, then Mortgagor agrees to the provisions of Wis. Stat. § 846.103, as amended, permitting Lender to waive its right to a judgment for a deficiency, and to hold a sale of the Property three months after a foreclosure judgment is entered. Regardless of terms to the contrary, if Mortgagor abandons the Property, then the sale of the Property shall be after two months from the date a foreclosure judgment is entered.
21. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state of Wisconsin and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

    Mortgagor represents, warrants and agrees that:
    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
    B. ~~Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and~~ shall remain in full compliance with any applicable Environmental Law.
    C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.
    D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

9831048

© 1994 Bankers Systems, Inc., St. Cloud, MN Form USB-REMTG-WI 12/20/2001 6100AD 12/01

(page 4 of 6)

22. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

23. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding sentence can change during the term of the secured debt(s). The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument, after sending Mortgagor written notice and allowing Mortgagor a reasonable opportunity for performance, when legally required. Notice is not required for an agricultural transaction where the collateral is perishable and threatens to decline speedily in value.

    All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

    Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

24. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

25. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

26. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

27. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the state of Wisconsin, except that repossession will be governed, to the extent permitted by Wis. Stat. § 421.201(5), as amended, by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed from the remaining provisions to the extent not prohibited by the Wisconsin Consumer Act and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

28. **NOTICE.** Any statutorily required notice may be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to the last address furnished to Lender by Mortgagor. Such a notice may be sent to only one address if all parties reside at that address and the notice is addressed to each party or, if required by Wis. Banking Rule 80.37, any party who resides at a different address shall be sent a separate notice.

29. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

30. **MORTGAGOR'S COPY.** Mortgagor shall be furnished an exact copy of the Note and of this Security Instrument at the time of execution.

9831048

(page 5 of 6)

© 1994 Bankers Systems, Inc., St. Cloud, MN Form USB-REMTG-WI 12/20/2001 6100AD 12/01

31. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until Lender has terminated all commitments for future advances.

☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ Additional Terms.

---

**FOR WISCONSIN RESIDENTS ONLY:**
The Secured Debt is incurred in the interest of the undersigned Mortgagors' marriage or family.

_____ 7-17-06 [Seal]     _____ 7-17-06 [Seal]
(Signature) GEORGIY FERIYANTS  (Date)         (Signature) GALINA FERIYANTS  (Date)

---

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

**NOTICE TO CUSTOMER**
(a) DO NOT SIGN THIS IF IT CONTAINS BLANK SPACES.
(b) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(c) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED A PARTIAL REFUND OF THE FINANCE CHARGE.

_____ 7-17-06 [Seal]     _____ 7-17-06 [Seal]
(Signature) GEORGIY FERIYANTS  (Date)         (Signature) GALINA FERIYANTS  (Date)

_____ _____ [Seal]    _____ _____ [Seal]
(Signature)                    (Date)         (Signature)                   (Date)

_____ _____ [Seal]    _____ _____ [Seal]
(Signature)                    (Date)         (Signature)                   (Date)

**ACKNOWLEDGMENT:**
(Individual)  STATE OF ....Wisconsin...................., COUNTY OF ....Ozaukee.................... } ss.
This instrument was acknowledged before me this ....17th.... day of ....July, 2006....
by GEORGIY FERIYANTS AND GALINA FERIYANTS

My commission expires: 3-15-2009        _____
(Seal)                                   (Notary Public)   Julie Shaw

                                         [Notary Seal: JULIE SHAW, NOTARY PUBLIC, STATE OF WISCONSIN]

This instrument was drafted by Diane Delia of First American ................................ (name).
                                 1228 Euclid Avenue, 4th Floor
                                 Cleveland, OH 44115
                                 800-598-0208

EXHIBIT "A"

LEGAL DESCRIPTION

A PARCEL OF LAND SITUATED IN THE STATE OF WISCONSIN, COUNTY OF OZAUKEE, WITH A STREET LOCATION ADDRESS OF 1150 W BALDWIN CT; MEQUON, WI 53092-5975 CURRENTLY OWNED BY GEORGIY FERIYANTS AND GALINA FERIYANTS HAVING A TAX IDENTIFICATION NUMBER OF 15-166-11-50-000 AND FURTHER DESCRIBED AS 1617/670 UNIT 1150 BALDWIN COURT CONDOMINIUM .


15-166-11-50-000
1150 W BALDWIN CT; MEQUON, WI 53092-5975

20061771421311
29177076/f

FERIYANTS
9831048

FIRST AMERICAN LENDERS ADVANTAGE
MORTGAGE